UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> STATE OF ILLINOIS, ) <br> ) <br> COMMONWEALTH OF KENTUCKY, and ) <br> ) <br> STATE OF NORTH CAROLINA, ) <br> ) <br>      Plaintiffs, ) <br> ) <br>      v. ) <br> ) <br> FORTUNE HI-TECH MARKETING, INC., ) <br> a Kentucky corporation, *et al.*, ) <br> ) <br>      Defendants. ) <br> ) | Civil No. 13cv578 <br><br> Judge John W. Darrah <br> Magistrate Arlander Keys |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE**

Defendants' motion to transfer venue to the Eastern District of Kentucky should be denied because they have failed to meet the heavy burden required to transfer the case. As the party seeking a transfer, Defendants must show that the relevant factors and interests strongly favor such a transfer in order to overcome the substantial weight the court must give to Plaintiffs' choice of forum. The crux of Defendants' argument is that this case should be heard in Kentucky where Defendants' headquarters are located, but the location of Defendants' principal place of business is not particularly relevant to Plaintiffs' allegations. None of Defendants' top recruiters is from Kentucky, only a minute fraction of their active representatives are residents of Kentucky, and the data demonstrating Defendants' pyramid scheme is easily transportable (and, indeed, already is accessible from Chicago). Meanwhile, the individual Defendants have demonstrated the ease of travel, appearing throughout North

America – including in Chicago – to encourage their agents to make the false representations that are at the heart of this case.[1]

Furthermore, Defendants have failed to identify any specific witnesses – a requirement for a venue transfer motion. As a consequence, Defendants have not argued, and thus have waived the argument, that any key witness would be absent if the case remains in Chicago. Since the balance of factors and interests does not favor Defendants at all, let alone strongly favor them, this case should remain in this district.

**I.    BACKGROUND**

On January 24, 2013, Plaintiffs filed an eight count Complaint for Permanent Injunction and Other Relief ("Complaint") (Doc. 4), alleging that Defendants violated the Federal Trade Commission Act and five state statutes by: (1) promoting a pyramid scheme; (2) misrepresenting that consumers who became representatives of Defendants would earn substantial income; and, (3) providing promotional materials to be used in recruiting new participants that contain false and misleading representations. On the same day, this Court granted Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order ("TRO") and appointed a Temporary Receiver over the Corporate Defendants. (Doc. 23.) In support of the TRO motion, Plaintiffs submitted four volumes of declarations and exhibits, including dozens of Defendants' own documents, transcripts of undercover tape recordings and presentations made by leading agents of the Defendants, and a declaration from an expert economist analyzing Defendants' business practices.

---

[1] *See* PX 6, Supplemental Declaration of Roberto C. Menjivar ("Menjivar Supp. Dec.") ¶15, Att. C at 5-6 (Paul Orberson exhorting attendees at 2010 FHTM Latino Convention in Chicago that "your testimonial in our business, like it or not, is your income . . . Big income brings you big testimony in our line of work").

The documentary evidence all but conclusively establishes that, no matter how they might label their business,[2] Defendants paid their representatives primarily for recruiting and not for the sale of products and services – the "*sine qua non*" of a pyramid scheme. *See United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 480 (6th Cir. 1999); *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781 (9th Cir. 1996). Moreover, this preference for recruiting over sales is consistent with the design of Defendants' compensation plan. Plaintiffs' documentary evidence also includes transcripts of business presentations made by most of Defendants' top representatives – the very people who, either directly or through their downlines, recruited most of the consumers who signed up with Defendants. These transcripts consistently contain explicit or implicit promises of substantial earnings, just as Defendant Orberson directed.

Since the issuance of the TRO, the Court-appointed Receiver has submitted a detailed Report of Temporary Receiver's Activities ("Receiver's Report") (Doc. 58), which confirms the factual allegations in Plaintiffs' Complaint and underscores the need for a preliminary injunction. In particular, the Receiver's independent investigation establishes that Defendants' earnings representations have been completely bogus: only a tiny fraction of representatives come close to making a decent living with FHTM, much less achieve the financial independence promised by Defendants. According to the Receiver's analysis, 98% of Defendants' representatives made less than $1000 per year and 74.4% earned less than $10 per year. (Doc. 58 at 1.) Conservatively, 88% of people signing up with Defendants lose money – and that is not even considering the unwanted goods and services the representatives are essentially forced to

---

[2] In their now-stricken response to Plaintiffs' preliminary injunction motion, Defendants make the rather Orwellian argument that because they apply the label "customers" to the people they recruit, they are a "customer acquisition" business. Doc. 55 at 20; Doc. 73.

3

purchase to remain in good standing with the company. (*See id.*) More than 97% of the consumers who signed up most recently with Defendants dropped out within a year. (*Id.* at 6.)

Further, the Receiver's Report makes clear that the vast majority of compensation earned by Defendants' representatives is for recruiting other representatives and not for the sale of products and services. (*Id.* at 7-8.) Without the revenue Defendants collected in mandatory sign-up fees and renewals, Defendants could not even pay the paltry commissions and bonuses earned by their representatives; the revenue generated from these representative-paid fees consistently exceeded the total revenue earned by Defendants in commissions from their so-called "partners." (*Id.* at 5.) Finally, the Receiver's Report establishes that, except for a handful of people at the top of the pyramid, the only people making any money at FHTM were Defendants Paul Orberson and Thomas Mills (and their families). Though they profess to have started FHTM to help others, Orberson and Mills paid themselves nearly $40 million, and their family members an additional $8 million. (*Id.* at 10-11.)

## II. ARGUMENT

Defendants have failed to establish that a transfer of this case for convenience is appropriate under 28 U.S.C. § 1404(a). Although the Memorandum in Support of Defendants' Motion to Transfer Venue ("Defs.' Memo") (Doc. 46) neglects to mention it, as movants, Defendants bear the burden of demonstrating that the interests of the parties, as well as the interests of justice, weigh strongly in favor of a transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Defendants must establish, "by reference to particular circumstances, that the alternative forum is clearly more convenient." *Tomkins v. Forte Capital Partners, LLC*, No. 05 C 5251, 2006 U.S. Dist. LEXIS 22341, at *14 (N.D. Ill. Apr. 5, 2006) (Darrah, J.). When venue is proper in both courts – as the parties agree it is in this case – a

movant must show that: (1) the transfer is for the convenience of the parties and witnesses; and (2) the transfer is in the interest of justice. *Benjamin v. Abbott Labs., Inc.*, No. 12-cv-385, 2013 U.S. Dist. LEXIS 15768, at *6 (N.D. Ill. Feb. 6, 2013) (Darrah, J.). Defendants have failed to meet that burden.

Most of the witnesses in this case – primarily victims, Defendants' top representatives, and expert economists – are scattered throughout the United States and Canada, and are much more likely to live in this district than the Eastern District of Kentucky. The material events at issue here involve the sales presentations and recruitment, which similarly took place primarily outside of Kentucky. Overall, this district is the more convenient forum, and Defendants have utterly failed to meet their burden to justify a transfer.

     **A.**    **Transferring the Case to Kentucky Would Not Be More Convenient**

When evaluating the conveniences, courts consider five factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Benjamin*, 2013 U.S. Dist. LEXIS 157648, at *12; *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

        **1.**    **Plaintiffs' Choice of Forum is Entitled to Great Weight**

Plaintiffs' choice of forum is entitled to great deference. "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). In *Nat'l Presto*, the Seventh Circuit affirmed the denial of a defendant's motion to transfer an SEC case to another district, and deferred to the SEC's choice of forum, even though the only ones who would be inconvenienced by the transfer were employees of the

5

SEC. *Id.* at 664-65. Even in cases in which the government has offices in the venue to which a party seeks to transfer a case, courts have held that the government's choice of venue must still be given "substantial deference." *SEC v. Nappy*, No. 93 C 3446, 1993 U.S. Dist. LEXIS 14684, at *6 (N.D. Ill. Oct. 13, 1993) (citing *SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 75 (D. Conn. 1988); *see also EEOC v. Texas Roadhouse, Inc.*, No. 1:11-cv-11732, 2012 WL 5894910, at *1 (D. Mass. Nov. 9, 2012)); *EEOC v. Titan Wheel Corp. of Ill.*, No. 11 C 6985, 2012 WL 1617401, at *2-3 (N.D. Ill. May 9, 2012); *United States v. Approximately $15,630.00 in U.S. Currency*, No. CIV. 07-0452 FCD KJM, 2007 WL 1831143, at *3-4 (E.D. Cal. June 25, 2007); *SEC v. Rose Fund, LLC*, No. C 03 -04593 WHA, 2004 U.S. Dist. LEXIS 22491, at *6-7 (N.D. Cal. Jan. 9, 2004). As Judge Posner explained, "[w]hen government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the federal government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees." *Nat'l Presto*, 347 F.3d at 665.[3] When, as here, the choice of forum is made under a special venue statute which "represents an affirmative congressional policy choice to allow . . . the widest possible choice of forums in which to sue," courts have given even more deference to the plaintiff's choice of venue. *Elecs. Warehouse*, 689 F. Supp. at 74 (citations omitted); *see also* 15 U.S.C. § 53(b)(2) (the FTC may bring suit where "the person, partnership or corporation resides or transacts business").

Plaintiffs selected Chicago as the venue for this lawsuit, and Defendants acknowledge that venue is proper here. The FTC, the Attorney General of Illinois, and lead Plaintiffs' counsel

---

[3] Judge Posner's concern may be increasingly appropriate. *See* OMB Report Pursuant to the Sequestration Transparency Act of 2012 (P.L. 112-155), http://www.whitehouse.gov/sites/default/files/omb/assets/legislative_reports/stareport.pdf at p. 209.

are all located in Chicago. Plaintiffs' venue choice should not be disturbed.

### 2. Situs of the Material Events Favors This District

The material events took place in this district and throughout the United States (and Canada), where Defendants and their agents signed up new representatives and made false earnings claims in furtherance of their pyramid scheme. As of January 28, 2013, when the Receiver took possession of Defendants' business, fewer than 1% of Defendants' representatives were located in Kentucky. Defendants had more representatives in twenty-six other states or provinces of Canada, including in Illinois -- where Defendants had more than three times as many representatives as in Kentucky.[4] For the vast majority of victims who reside neither in Kentucky or Illinois, travel to Chicago, a well-recognized transportation hub, would be much easier and less time consuming than travel to Lexington, Kentucky.[5]

Courts considering section 1404(a) motions have found that the situs of material events is wherever consumer injury occurred. *FTC v. Phoenix Avatar, LLC*, No. 04 C 2897, 2004 U.S. Dist. LEXIS 14717, at *2-3 (N.D. Ill. July 29, 2004) (transfer motion denied because defendants "transacted business here" by sending emails into this district containing hyperlinks to deceptive websites). Nevertheless, Defendants treat this case as if it involves a breach of contract, arguing – without citation to any authority – that the material events are limited to Kentucky where they "developed the accused business structure, and designed and implemented FHTM's marketing, training, and compliance programs." (Defs.' Memo at 4.). This narrow interpretation of where

---

[4] PX 6, Menjivar Supp. Dec. ¶22, Att. K (1083 current representatives reside in Illinois while only 314 reside in Kentucky); *see also id*. ¶23 & Att. J (transcripts in evidence are of FHTM representatives who reside outside of Kentucky).

[5] *See id*. (6612 representatives reside in Canada, 6579 in California, 3098 in Michigan).

7

the acts and practices occurred cannot be supported. Defendants may have created their business in Kentucky, but their marketing and recruiting efforts, which are the material events in this case, took place throughout the United States and Canada. *See Irwin Indus. Tool Co. v. Orosz*, No. 03 CV 1738, 2003 U.S. Dist. LEXIS 15143, at *19 (N.D. Ill. Aug. 27, 2003) (Darrah, J.) (finding "situs of material events" to be the location to which "the letters, telephone calls and e-mails" were directed); *see also Silverlit Toys Manufactory Ltd. v. Absolute Toy Mktg., Inc.*, No. C 06-7966 CW, 2007 U.S. Dist. LEXIS 14538, at *34 (N.D. Cal. Feb. 15, 2007) (in Internet marketing case "the alleged injury occurred wherever a consumer bought a product"). Indeed, consumers' experiences and injuries are the cornerstone of cases like this one, given that an act or practice is deceptive under the FTC Act if "the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988).

### 3. Ease of Access to Sources of Proof Does Not Favor Transfer

Whatever relevant documentary evidence existed in Kentucky has been thoroughly reviewed and copied by the parties, or could easily be transported to this district. Digital and documentary evidence "'is highly transferable and transporting it generally does not pose a high burden upon either party.'" *J.B.*, 2013 U.S. Dist. LEXIS 15768, at *14 (quoting *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009)). Defendants already spent several days reviewing and copying any relevant documents from Defendants' business premises, and have argued that the principal source of document discovery needed at this point consists of learning what documents are in the custody of the FTC office in Chicago. (*See* Def. Mot. for Expedited Disc. (Doc. 51).)

Any additional evidence is not likely to be in Kentucky, but in the possession of

Defendants' victims – virtually none of whom live in Kentucky – and Defendants' top representatives – none of whom are residents of Kentucky. *See Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007) (noting that "[d]ocuments outside the district can just as easily be shipped or sent to Illinois"). Defendants do not even attempt to argue that whatever documentary evidence remains in Kentucky would be "difficult or impossible to transport." *Shields v. Illinois Dept. of Corrections*, No. 10 C 3746, 2011 U.S. Dist. LEXIS 1049, at *5 (N.D. Ill. Jan. 6, 2011). Transferring this case to Kentucky will not ease any parties' access to evidence.

### 4. Convenience of the Parties Does Not Favor Transfer

The FTC attorneys and investigator who have handled this matter since its inception are based in the FTC's Chicago office, which covers the Midwest Region, including Kentucky. The FTC has no office in Kentucky. Although co-Plaintiff Commonwealth of Kentucky is located in Kentucky, co-Plaintiff State of Illinois is located here.

In weighing this factor, courts have given considerable deference to the government's choice of venue, even when the government had offices in both locations, recognizing that it would be inconvenient to transfer a case to an office that had no familiarity with it. *See Nappy*, 1993 U.S. Dist. LEXIS 14684, at *6 ("[T]he SEC's New York office is not familiar with this suit . . . ."); *Elecs. Warehouse*, 689 F. Supp. at 75 (SEC would be inconvenienced by transfer even though SEC had offices in both venues); *see also SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978); *Rose Fund*, 2004 U.S. Dist. LEXIS 22491, at *6-7. Moreover, a transfer motion "cannot be used simply to shift the one party's inconvenience onto another." *I.P. Innovation, LLC v. Lexmark Int'l, Inc.*, 289 F. Supp. 2d 952, 955, (N.D. Ill. 2003). Therefore, this factor favors Plaintiffs' choice of venue.

### 5. Convenience of Witnesses Strongly Favors This District

The location of witnesses clearly favors Illinois, which is more centrally located and convenient for the vast majority of potential witnesses in this case. *U.S. v. Binder*, 794 F.2d 1195, 1200 (7th Cir. 1986) (recognizing that "the widely scattered residences of the other witnesses, many of whom lived on or near the east coast, favored a central location for trial like Illinois rather than a far western location like California"). The convenience of third-party witnesses "is a significant factor" in the analysis of whether to transfer a case and is typically more significant than the convenience of party witnesses, who often must appear voluntarily. *Nobbe v. GM Corp.*, No. 08 CV 4631, 2009 U.S. Dist. LEXIS 44511, at *8 (N.D. Ill. May 27, 2009). The convenience of nonparty witnesses is more significant to the analysis, since party witnesses are typically required to appear voluntarily. In evaluating the convenience of witnesses, courts look beyond the number and weigh "the quality and nature of their proposed testimony." *Irwin Indus.*, 2003 U.S. Dist. LEXIS 15143, at *19.

In this case, the third-party witnesses who will provide important testimony include consumers, Defendants' top representatives, and possibly Defendants' third party vendors.[6] Of these, the vast majority of these witnesses live outside Kentucky. Although Plaintiffs eventually may identify additional witnesses after discovery begins in earnest, the most likely consumer witnesses are those who have complained directly to FHTM.[7] Almost none of these potential witnesses resides in Kentucky. Beyond Plaintiffs' expert, an economist employed by the FTC in

---

[6] *See* PX 6, Menjivar Supp. Dec. ¶20 & Att. I (third party vendor terminating its relationship with FHTM due to misrepresentations made by FHTM representatives).

[7] A sampling of complaint letters found at Defendants' premises are filed herewith. *See* PX 6, Menjivar Supp. Dec. ¶13, Att. B.

Washington, D.C., and the FTC's primary investigator on this case, who works in the Chicago office, Plaintiffs expect that the primary witnesses at a trial, if necessary,[8] will be Defendants' former representatives, including its most successful recruiters. None of Defendants' top representatives – who made the bulk of the false representations – resides in Kentucky.[9] Given Chicago's central location, undoubtedly it will be much easier for witnesses to testify here.

Indeed, by failing to list a single witness in their Motion, Defendants have failed to meet their burden to show that a transfer is needed for witness convenience. *See Tomkins*, 2006 U.S. Dist. LEXIS 22341, at *18 ("The party seeking transfer must specify the key witnesses to be called and establish that the nature and quality of their testimony with respect to the issues of the case warrants the case's transfer."). "The party requesting the transfer has the burden of demonstrating 'who its witnesses are, the nature of their testimony, and how important that testimony will be to the case.'" *Metzger v. Sleeveco, Inc.*, No. 09-cv-6071, 2010 U.S. Dist. LEXIS 13722, at *7-8 (N.D. Ill. Feb. 12, 2010) (Darrah, J.) (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Salasnek Fisheries, Inc.*, 977 F. Supp. 888, 891 (N.D. Ill. 1997)). *See also Ace Hardware Corp. v. The Expo Group, L.P.*, No. 09 C 7738, 2010 U.S. Dist. LEXIS 59061, at *8 (N.D. Ill. June 8, 2010) (Darrah, J.); *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998) (unidentified witnesses "insignificant in the court's determination of whether to transfer the case").[10]

---

[8] Absent settlement, Plaintiffs anticipate that this litigation will conclude when the Court grants Plaintiffs' summary judgment motion (to be filed after the close of discovery).

[9] *Id*. ¶23 & Att. J. Documents found on Defendants' premises show that Kentucky consistently lagged behind other states in signing up new representative. *See id*. ¶19 & Atts. H & J.

[10] Defendants should not be allowed to correct this obvious omission in their Reply. *See Fox v. Hayes*, 600 F.3d 819, 838 (7th Cir. 2010) ("too late" for party to develop new theory in reply brief); *U.S.*
(continued...)

Defendants nakedly assert that Defendants' employees "will be the most important witnesses." (Defs.' Memo at 5.) First, as noted above, the convenience of party witnesses is accorded far less weight than the convenience of other witnesses. *See Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill.2007). Second, the declarations Defendants submitted as exhibits to their now-stricken Opposition to Plaintiffs' *Ex Parte* Application for TRO With other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Request to Appoint Receiver (Docs. 55-56), do not remotely suggest that Defendants' employees will be important witnesses. Four former employees – two of whom are the children of Defendants Paul Orberson and Thomas Mills – submitted declarations that primarily introduce financial information or company documents, many of which had already been introduced by Plaintiffs. None of the declarants ever suggests that traveling to Chicago would be inconvenient. In fact, presumably all of them were prepared to come to Chicago for a preliminary injunction hearing. (*See* Defs.' Mot. for Live Test. at Hr'g on Pls.' Mot. for Prel. Inj. (Doc. 49) at 5-6.) Further, Defendants have not demonstrated that any of the Kentucky witnesses can offer any non-cumulative testimony beyond that of the individual Defendants,[11] or the two experts proffered by Defendants, neither of whom resides in Kentucky incidentally. (*See* DX-I, Wayne Alan Luce Decl. (Doc. 56-11) (a "consultant" from North Carolina), and DX-K,

---

[10](...continued)
*v. Funds in the Amount of $220,030 in U.S. Currency*, No. 11-cv-7779, 2013 U.S. Dist. LEXIS 20188, at *9 (Darrah, J.) ("It is well established that arguments raised for the first time in a reply brief are waived."); *G2 Enters., LLC v. Nee*, No. 05-cv-5803, 2006 U.S. Dist. LEXIS 75530, at *13-14 (Darrah, J.) (cannot present new arguments or facts in reply).

[11] Paul Orberson claims to "work closely" with Defendants' representatives. DX-B, Declaration of Paul C. Orberson (Doc. 56-3) at ¶ 7. Similarly, Thomas Mills stated that he is "responsible for the day-to-day management of the company . . . oversee[ing] the various departments, including customer service, marketing and communications, product management, human resources, information technology, finance, compliance, and legal departments." DX-C, Dec. of Thomas A. Mills (Doc. 56-4) at ¶ 7.

Charles King Decl. (Doc. 56-13) (an economics professor at the University of Illinois at Chicago).)[12]

### B. Transfer Would Not Be in the Interest of Justice

The factors courts consider in determining whether a transfer would be in the interest of justice are at most neutral, even when viewed from Defendants' perspective, and, therefore, Plaintiffs' choice of forum should stand. "In analyzing the interest of justice, the appropriate analysis focuses upon traditional notions of judicial economy, the speed at which cases proceed to trial, and the courts' familiarity with applicable law and desire to resolve controversies in their locales." *Benjamin*, 2013 U.S. Dist. LEXIS 15768, at *15-16.

Contrary to Defendants' arguments from cherry-picked data, the data show that this case is likely to be handled as quickly in this District as in the Eastern District of Kentucky. Courts consider the median number of months from filing to disposition, as well as the median number of months from filing to trial. *Id.* at *16 (citing *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 837 (N.D. Ill. 2004)). Based on the data provided by Defendants (Defs.' Mot. Ex. 1), for Fiscal Year 2012, this District disposed of civil cases in an average of 6.5 months, while the Eastern District of Kentucky took an average of 7.9 months. The Eastern District of Kentucky did not report the average time to trial in civil cases in FY 2012, but for FY 2011, the Eastern

---

[12] Similarly, Defendants have hired Chicago counsel to act as lead attorneys in this case. Despite this fact, one of Defendants' Kentucky attorneys traveled to Chicago to attend the hearing simply for presentment of Defendants' motions, suggesting that it is hardly inconvenient for Defendants to defend in this district.

District of Kentucky took an average of 23.6 months, while this District took an average of 28.4 months. Thus, this factor is neutral.[13]

Other factors used to evaluate the interests of justice do not favor either district. Federal courts are equally competent in deciding issues of federal law (although this Court has substantially more experience resolving cases brought under the FTC Act than the Eastern District of Kentucky), while this Court is likely more familiar with Illinois law, the Eastern District of Kentucky is likely more familiar with Kentucky law, and neither court would necessarily be more familiar with North Carolina law. Both locales have an interest in resolving the issues of its residents. *Benjamin*, 2013 U.S. Dist. LEXIS 15768, at *17. Although Defendants are based in Kentucky, this venue has a strong interest in, and relationship to, this litigation. Defendants actively recruited and sold their products and services in Illinois, thus causing substantial injury to consumers here. *Safco Corp. v. Miletic*, No. 96 C 4461, 1996 U.S. Dist. LEXIS 11685, at *13 (N.D. Ill. Aug. 12, 1996); *Biesek v. Soo Line R.R. Co.*, No. 03 C 5452, 2004 U.S. Dist. LEXIS 4672, at *9 (N.D. Ill. Mar. 22, 2004) (venue has "substantial interest in addressing" injuries to its citizens). In addition to Illinois, consumers injured by Defendants' fraudulent business practices are located all over the United States and Canada, with very few of those consumers located in Kentucky. *Safco*, 1996 U.S. Dist. LEXIS 11685, at *13 (to the extent a defendant conducts business outside of its own state, the wrongful act occurred where the transaction takes place); *Santa's Best Craft, LLC v. Janning*, No. 02 C 9529, 2003

---

[13] Curiously, Defendants do not mention that two class actions are currently pending against them in the Eastern District of Kentucky. *See Day v. Fortune Hi-Tech Mktg., Inc.*, No. 5:10-cv-00305-KKC (filed Sept. 2, 2010); *Wallace v. Fortune Hi-Tech Mktg., Inc.*, No. 3:10 CV 2641 DMS NLS (originally filed in C.D. Cal. and transferred to E.D. Ky. on Apr. 11, 2011). Defendants' reluctance to mention them is likely because neither class action, although filed years ago, has progressed even far enough for a discovery order to be entered.

U.S. Dist. LEXIS 11042, at *11 (N.D. Ill. June 30, 2003) (where product sold nationwide, issue of community relationship to occurrence "is a wash").

### III. CONCLUSION

For the reasons stated above, Defendants have failed to carry the heavy burden required to transfer this case for convenience. Neither the private nor the public interests favor a transfer. Therefore, Plaintiffs' choice of forum should not be disturbed and Defendants' motion to transfer venue should be denied.

                                                Respectfully submitted,

                                                DAVID C. SHONKA
                                                Acting General Counsel

Dated: March 12, 2013                /s/ David A. O'Toole
                                                DAVID A. O'TOOLE
                                                ELIZABETH C. SCOTT
                                                ROZINA C. BHIMANI
                                                JOHN C. HALLERUD
                                                Federal Trade Commission
                                                55 West Monroe Street, Suite 1825
                                                Chicago, Illinois 60603
                                                (312) 960-5634 [telephone]
                                                (312) 960-5600 [facsimile]

                                                Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

      I, David O'Toole, an attorney, hereby certify that on March 12, 2013, I electronically filed the foregoing **Plaintiffs' Response to Defendants' Motion to Transfer Venue**, with the Court using the CM/ECF system, which will automatically send copies to all registered counsel.

      Respectfully Submitted,

      /s/ David A. O'Toole
      DAVID A. O' TOOLE
      Federal Trade Commission
      55 West Monroe Street, Suite 1825
      Chicago, Illinois 60603
      Voice: (312) 960-5634
      Fax:   (312) 960-5600
      email: dotoole@ftc.gov